RINGENOLDUS, Clerk, Respondent, vs. ABRESCH, imp., Appellant.

*October 2—October 20, 1903.*

*Assignment for benefit of creditors: Action on assignee's bond: Debt incurred by assignee: Restoration of property to assignor before payment: Assent of creditor: Discharge of sureties.*

1. The bond given by an assignee for the benefit of creditors is not an official bond, within the meaning of sec. 986, Stats. 1898.
2. The statutes (secs. 1698, 1700, Stats. 1898) relating to the filing of claims against the assignor, have no application to an indebtedness incurred by the assignee in executing the trust.
3. An action upon the bond of an assignee for breach thereof in restoring the property to the assignor before payment of an indebtedness incurred by the assignee in executing the trust, does not in any way attack an order discharging the assignee from all obligations as such to creditors of the assignor, especially where such order expressly required that the expenses of exe-

cuting the trust be paid by the assignor as a condition precedent to the restoration of the property.

4. Such partial or conditional discharge of the assignee did not relieve him or the sureties on his bond from liability in respect to the breach mentioned.

5. An attempt to collect the debt, so incurred by the assignee, from the assignor, who had agreed with the assignee to pay the same, was not such an election to rely upon the assignor's liability as would discharge the assignee.

6. The question whether the sureties on the assignee's bond would be bound by his contracts in carrying on the assigned business by order of the court, is not involved or determined.

7. Sec. 1701, Stats. 1898, providing for restoration of the property to the assignor only upon payment by him of the expenses of executing the trust, was intended not merely for the protection of the assignee, but also for the protection of persons who, by reason of dealings with the assignee, were entitled under sec. 1700 to liens upon the property.

8. Where a person to whom the assignee had become indebted in executing the trust, and who was entitled to a lien upon the assigned property for the amount of his claim, assented to the restoration of the property to the assignor without permission of the sureties on the assignee's bond, such sureties were thereby released from liability for the claim.

9. Assent of the claimant to the restoration of the property, in such a case, was sufficiently evinced by his conduct, where, after being notified that the assignee had released the property and taken an indemnity bond from the assignor to secure payment of the claim, he made no further effort to obtain payment in the assignment proceedings, but attempted to enforce the agreement of the assignor, making no claim against the assignee's bondsmen until several years later.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

Action on an assignee's bond, in the name of the clerk of the circuit court for Milwaukee county, for the benefit of the creditors of the assignee and the assignor. May 10, 1897, George Schweickhart made an assignment of his property in due form for the benefit of his creditors to Paul C. Biersach. The bondsmen of the assignee were Charles O. Manegold and *Charles Abresch.* There was an informality in the bond in

that it ran to the state of Wisconsin as obligee instead of the clerk of the circuit court for Milwaukee county. The property that came to the hands of the assignee was of the value of about $35,000 and included a factory for putting up various kinds of mineral and carbonated waters. The court having supervision of the execution of the trust authorized the assignee to continue operating the factory, which he did, and in so doing incurred an indebtedness to C. F. Leng of $1,563.23 for bottles between May 10 and October 1, 1897. $812.05 thereof remains unpaid. The assignee made a profit, by continuing the business, of $2,135.67. October 2, 1897, the time having expired for creditors to file claims, upon the petition of the assignee, assented to by the assignor, showing that all creditors who had filed claims had filed releases of the same in the office of the clerk of the circuit court for Milwaukee county, an order was entered discharging the assignee and requiring him to deliver all property in his hands as such assignee to the assignor on condition of the latter paying the fees and expenses and costs of court. Thereupon the trust property was delivered to the assignor without his first paying the indebtedness to Leng, who was not informed of the transfer till December 28, 1898, when the information in that regard came to him accompanied by an assurance from the assignee that the assignor had assumed and agreed to pay such indebtedness and given a bond to indemnify the former against liability on account of his having parted with the trust property in advance of payment being made. January 10, 1900, Schweickhart filed his petition in bankruptcy in the United States court for the Eastern district of Wisconsin, and such proceedings were subsequently taken in that regard that Leng filed in such court a claim for the aforesaid indebtedness against the bankrupt, and received thereon a dividend of $12.50, that being the full amount recoverable in such proceedings. The only recourse of Leng and others to whom Biersach became indebted as assignee and failed to pay or re-

quire the assignor to pay before returning the assigned estate to him, is upon the assignee's bond.

All the aforesaid facts were set forth in the complaint as a cause of action which Leng was entitled to prosecute in the name of the proper obligee in the assignee's bond, against the obligors. The prayer for relief, among other things, was for the substitution of the clerk of the circuit court for Milwaukee county as obligee in the bond in place of the state of Wisconsin. Defendant *Abresch* demurred to the complaint for insufficiency and the demurrer was overruled. He appealed from the order accordingly entered.

*Louis G. Bohmrich,* for the appellant.

For the respondent there was a brief by *E. J. Henning,* attorney, and *Kanneberg & Cochems,* of counsel, and oral argument by *A. Kanneberg.*

MARSHALL, J. The major part of appellant's propositions to support the claim that the court erred in overruling the demurrer do not seem to call for extended discussion. We will refer to them briefly.

It is said that the complaint fails to show performance of the condition precedent created by sec. 986, Stats. 1898. That regulates procedure in the enforcement of official bonds, not such as the one involved here.

It is further said that the complaint fails to show that plaintiff complied with the statutes in regard to the filing of claims by creditors of insolvents. This was not such a claim. The indebtedness accrued after the assignment, by contract with the assignee.

The next suggestion is that the complaint shows that the assignee was by order of the court discharged from all obligations as assignee to the creditors of the assignor, for any money or property that came to his hands, and that the order cannot be collaterally attacked. We perceive no attempt to attack the order collaterally or otherwise. This suit is not to

enforce the rights of a creditor of the assignor, but those of a creditor of the assignee having a right to a lien upon the assigned property, which the assignee, in breach of his duty and of his bond, has rendered valueless. The court expressly preserved that right, in that it ordered that the expenses of executing the trust should be paid by the assignor as a condition precedent to the trust property being restored to him.

The next point made is that Leng's remedy was under sec. 2832, Stats. 1898, for relief from the order. The answer to that is that he does not seek or want relief from the order. What he seeks is to recover his damages for a violation of the order.

Then it is suggested that the order discharged the principal and that such circumstance, upon familiar principles, discharged the surety. The trouble with that is that the principal was not discharged unconditionally. He was required to retain possession of the property till payment by the assignor of the expenses of executing the trust. That he failed to do, and it is for such failure, as indicated, that Leng complains.

Further, it is said that by Leng's filing his claim in the bankruptcy proceedings instituted by Schweickhart, he elected to rely upon the latter's liability, and so discharge the assignee. The rule invoked, it will readily be seen, has no application, since the enforcement of the claim against Schweickhart, as regards his personal liability, was perfectly consistent with holding the assignee likewise bound. Upon the facts alleged there was the situation, often met with, of a contract made by one person with another for the benefit of a third person, the latter being a creditor of the former and the benefit to flow to such third person being satisfaction of the first person's indebtedness to him. The beneficiary in such circumstances can assent to and sue on the contract made for his use without prejudice to the contractual liability of the original debtor till the actual discharge of the debt. *Stites*

*v. Thompson,* 98 Wis. 329, 331, 73 N. W. 774; *Kuhl v. C. & N. W. R. Co.* 101 Wis. 42, 57, 77 N. W. 155.

It is further suggested that it is a question for consideration whether the sureties in any event would be bound by contracts of the assignee in carrying on the assigned business, though done by order of the court. No such question is necessarily involved here. This suit is not grounded on the idea that the sureties became liable to Leng because the assignee incurred the indebtedness to him in operating the assigned business; but on the idea, as before iterated and reiterated, that the assignee failed to pay the expenses of administering the trust, part thereof being the claim of Leng, or to see that the assignor did so, as ordered by the court, before releasing the trust property, which Leng had a right to rely upon for his pay, and thus breached his bond.

Another point made is that the condition of the bond is that the assignee will pay over to the creditors of the assignor, existing at the time of the assignment, "all moneys," etc., and "abide the order of said court," and that respondent was not such a creditor. In that counsel seems to easily ignore the condition of the bond last stated, i. e., that the assignee will abide by the order of the court. It is the breach of that upon which this action is founded.

But it is said that failure of the assignee to insist upon the assignor's paying the expenses of executing the trust before turning over the trust property, is not an actionable breach of the bond, since the provision of the order in that regard was for the sole benefit of the assignee, and he could therefore waive it if he saw fit. Not so. Sec. 1700, Stats. 1898, made the expenses of executing the assignment a charge upon the assigned property to be paid before the claims of creditors, while sec. 1701 provides for a return of the assigned property, in the circumstances of this case, only upon proof being filed of the payment of all proved claims, and payment by the

assignor of the expenses of executing the trust. The latter section was evidently intended as much for the protection of persons entitled to liens upon the trust fund by reason of dealing with the assignee, as for the latter's protection.

The foregoing covers all the points raised by appellant's counsel except one. The manifest reason for treating them so briefly is because they seem obviously untenable. The remaining point appears to be fatal to the complaint. It is this: It appears upon the face of the pleading that Leng, without permission of the sureties, consented to the delivery of the trust property to the assignor upon his giving an indemnity bond to pay the former's claim. There is no principle better settled than that when there is a surety for the payment of the claim of another, and a property or a fund in the hands of the principal to which such other has a legal right to resort to collect such claim, if he consents to the release of such property or fund without permission of the surety, the latter is *ipso facto* discharged. Brandt, Suretyship & Guar. §§ 426, 429, 434. That is within the general rule that one secured of his claim against another by a surety owes to the latter a duty not to deal with his debtor to the prejudice of the surety. *Gardner v. Van Norstrand,* 13 Wis. 543; *Omaha Nat. Bank v. Johnson,* 111 Wis. 372, 87 N. W. 237; 24 Am. & Eng. Ency. of Law (1st ed.) 851, 856. The complaint shows that Leng was notified December 28, 1898, that the assignee had released the trust property to the assignor, and accepted in lieu thereof, to secure payment of his claim, an indemnity bond of such assignor. The inference from such circumstances that the release was assented to, seems clear beyond reasonable controversy. No effort was made by Leng in the assignment proceedings to obtain payment of his claim after receiving notice that an indemnity bond had been given for his benefit. The assignor's liability rested wholly on his agreement with the assignee, in consideration of which he received the trust property. The enforcement of that agree-

ment by Leng necessarily made him a party to it. Consistent with that he made no claim whatever against the assignee's bondsmen till nearly four years after the trust property was delivered to the assignor, and until after he became satisfied that he could not collect his claim out of Schweickhart and his sureties. It hardly goes far enough in favor of appellant to say that such facts show clearly implied assent to the release of the trust property and to the substitution of the promise of Schweickhart and his sureties in lieu thereof. They evince an express assent thereto, rendering obviously applicable the rule of law above stated. It follows that the demurrer to the complaint should have been sustained.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to sustain the demurrer.